IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| JAMES NELSON, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | Cv. No. 2:21-cv-02288-SHL-atc |
| v. | ) | Cr. No. 2:18-cr-20163-SHL-1 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER DENYING MOTION PURSUANT TO 28 U.S.C. § 2255, DENYING A CERTIFICATE OF APPEALABILITY, CERTIFYING THAT AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

Before the Court is the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody ("§ 2255 Motion") filed on May 6, 2021, by pro se Movant James Nelson, Prisoner number 17157945, an inmate at the Shelby County Jail. (ECF No. 1.) The Government filed its Answer on September 24, 2021. (ECF No. 12.) The Answer included the affidavits of attorneys Mary C. Jermann-Robinson, who was initially appointed to represent Nelson in his underlying criminal matter, and Valentine C. Darker, who was appointed to represent Nelson after Jermann-Robinson withdrew because of a conflict. (ECF Nos. 12-1 & 12-2.) Nelson filed a reply on November 10, 2021. (ECF No. 19.)[1]

---

[1] Nelson supplemented his § 2255 motion on multiple occasions, both before and after the Government filed its Answer. (See ECF Nos. 9, 13, 14, 15, 24.) Those filings included, among other things, requests that Nelson be provided exculpatory evidence, including crime-scene evidence collected by the public defender's investigator. Nelson also supplemented his reply with additional argument and more requests that he be provided with exculpatory evidence. (See ECF Nos. 21 & 22.) Nelson also sought the appointment of counsel (ECF Nos. 6 & 13), which the Court denied on October 15, 2021 (ECF No. 16), explaining that the Sixth Amendment right to the appointment of counsel in criminal cases does not extend beyond the first appeal as of right, and the interests of justice would not be served by an appointment in this

For the reasons stated below, the Court **DENIES** the § 2255 Motion.

## BACKGROUND AND PROCEDURAL HISTORY

I.      **Criminal Case No. 2:18-cr-20163-SHL**

On May 31, 2018, a federal grand jury in the Western District of Tennessee returned a two-count indictment against Nelson. (Criminal ("Cr.") ECF No. 2.) The indictment alleged that Nelson violated 18 U.S.C §§ 922(g)(1) and 922(g)(9), by knowingly possessing a Smith & Wesson .40 caliber pistol after having previously been convicted of a felony and of a misdemeanor crime of domestic violence.

On March 20, 2019, Nelson pleaded guilty to both counts of the indictment. (ECF No. 37 & 39.) According to the presentence report, the incident that gave rise to the indictment involved the shooting of Keysha Caldwell, the mother of Nelson's daughter. (Cr. ECF No. 44 (sealed).) On September 15, 2017, Memphis Police Department officers responded to a shooting at a Memphis apartment building. (Id. at PageID 119.) Nelson was taken into custody outside the apartment and officers found Caldwell inside, dead with a gunshot wound to her head. (Id.) A Smith and Wesson .40 caliber pistol was found near her body. (Id.)

Nelson acknowledges that he and Caldwell had a verbal altercation that turned violent. Nelson slammed Caldwell's head into the wall and ripped her clothes. (Id. at PageID 120.) When Caldwell tried to leave the residence, she attempted to push Nelson. (Id.) According to the couple's child and Caldwell's boyfriend,[2] who were both at the scene, Nelson then pointed

---

matter (id. at PageID 106–07). Nelson also filed a motion requesting a final judgment as to his § 2255 motion (ECF No. 30), a motion requesting the status of that motion (ECF No. 31), and a "Motion to Hear and Rule" as to his § 2255 motion (ECF No. 35). With the entry of this Order, each of those motions is moot.

[2] The presentence report describes the man as Caldwell's boyfriend. (Cr. ECF No. 44 at PageID 120.) The Government's Answer identifies him as Caldwell's husband (ECF No. 12 at

2

the pistol at Nelson and shot her in the head. (Id.) Nelson later told police that Caldwell attempted to take the firearm from him and that he did not kill her. (Id.) When probation interviewed him, he again indicated that the shooting was not intentional and that the gun discharged when he and Caldwell were struggling over it. (Id.)

The Court sentenced Nelson to 405 months as to Counts 1 and 2 of the indictment, to be served concurrent with each other, for a total term of imprisonment of 405 months, which was to be "served concurrent to any undischarged sentence in Shelby County Case # 17022224." (Cr. ECF No. 62 at PageID 204.) Nelson was also sentenced to a three-year term of supervised release. (Id. at PageID 205.)

Nelson appealed the final judgment to the Sixth Circuit Court of Appeals on August 13, 2019. (Cr. ECF No. 63.) Nelson argued on appeal that his sentence was procedurally unreasonable, asserting that the Court should have determined that the appropriate cross-reference under § 2K2.1(c) was to involuntary manslaughter, not second-degree murder, because Caldwell's death was the product of recklessness or negligence. (Cr. ECF No. 77 at PageID 529–30.) In its order denying that appeal, the Sixth Circuit explained that, under § 2K2.1(c)'s cross-reference provision, "if the convicted felon's possession of a firearm was in connection with the commission of another offense, the applicable base offense level is determined by the guideline for the underlying offense." (Id. at PageID 529.)

The Sixth Circuit found that, "[w]hen a death occurs as a result of the defendant's firearm possession, the district court has four possibilities for the most analogous homicide cross-reference: first-degree murder, second-degree murder, voluntary manslaughter, and involuntary

---

PageID 48), and the Nelson and Caldwell's daughter alternatingly referred to him as her mom's boyfriend and her stepdad (see Cr. ECF No. 71 at PageID 275, 276 –279).

3

manslaughter." (Id. at PageID 530.) Second-degree murder "is an unlawful killing with malice aforethought, but without premeditation or another statutorily defined requirement," whereas "[m]anslaughter is the unlawful killing of a human being without malice." (Id. at PageID 530–31 (citations omitted).) Ultimately, the Sixth Circuit concluded that this Court did not err by applying the cross-reference for second degree murder when it determined Nelson's sentence based on the evidence. (Id. at PageID 534.)

## II. Nelson's § 2255 Motion

Nelson's § 2255 Motion again asserts that the cross-reference of second-degree murder that the Court relied upon in making its sentencing calculation was erroneous and that his sentence should be adjusted accordingly. His argument has two bases: first, he asserts that ineffective assistance of counsel violated his Sixth Amendment rights. (ECF No. 1 at PageID 4–6.) Nelson argues that his attorney did not try to obtain exculpatory material that would have demonstrated his lower level of culpability in Caldwell's death, which resulted in the Court applying the incorrect second-degree murder cross-reference. [3]

Second, Nelson argues that his 14th Amendment rights were violated through prosecutorial misconduct. (Id. at PageID 7.) He asserts that the prosecutor used a false police report and inappropriately relied upon a medical examiner's opinion, because the prosecutor was the only person to have had contact with the medical examiner. (Id. at PageID 9, 10.) [4]

---

[3] All of the acts that Nelson alleges amount to ineffective assistance of counsel occurred well after Jermann-Robinson had been granted leave to withdraw as his attorney. The Court granted Jermann-Robinson's motion to withdraw on July 2, 2018, three weeks prior to Nelson's first report date. (See ECF Nos. 18 & 24.)

[4] Nelson's claim for prosecutorial misconduct also recapitulates some of the same arguments he made in his direct appeal to the Sixth Circuit, including that the Court applied the incorrect cross-reference, that its sentence was procedurally unreasonable, and that there was conflicting testimony at sentencing. Those arguments are not properly before this Court, as "[a] federal prisoner may not relitigate in a § 2255 motion to vacate sentence claims that were raised

## ANALYSIS

### I. LEGAL STANDARD

Under 28 U.S.C. § 2255(a),

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." Short v. United States, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted). A movant has the burden of proving that he is entitled to relief by a preponderance of the evidence. Pough v. United States, 442 F.3d 959, 964 (6th Cir. 2006).

### II. Ineffective Assistance of Counsel

A claim that ineffective assistance of counsel deprived a movant of his Sixth Amendment right to counsel is controlled by the standards stated in Strickland v. Washington, 466 U.S. 668, 687 (1984), which require a showing that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." To demonstrate deficient performance, a movant must demonstrate that "counsel's representation fell below an objective standard of reasonableness." Id. at 688.

> A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance. The challenger's burden is to show that counsel made

---

and considered on direct appeal." DuPont v. United States, 76 F.3d 108, 111 (6th Cir. 1996) (citation omitted).

>errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment.

Harrington v. Richter, 562 U.S. 86, 104 (2011) (internal quotation marks and citations omitted).

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding. Counsel's errors must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Harrington, 562 U.S. at 104 (internal quotation marks and citation omitted); see also id. at 111–12 ("In assessing prejudice under Strickland, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . . The likelihood of a different result must be substantial, not just conceivable.") (citations omitted); Wong v. Belmontes, 558 U.S. 15, 27 (2009) (per curiam) ("But Strickland does not require the State to 'rule out' [a more favorable outcome] to prevail. Rather, Strickland places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different.").

Nelson alleges that Darker's representation amounted to ineffective assistance of counsel in several ways. First, he asserts that she failed to argue that the District Court's findings were insufficient and that she failed to preserve the issue when she responded to the "Bostic" question. Next, he asserts that she failed to obtain a mental evaluation "that was required according to Nelson[']s history." (ECF No. 1 at PageID 4.) Next, he asserts that his counsel failed to raise the argument that he acted in self-defense. Finally, he asserts that his counsel failed to obtain exculpatory evidence from the state. As explained below, none of these bases establish that

6

counsel's performance was deficient or that Nelson was prejudiced by any such deficient performance. The record reflects that Darker's representation did not fall below an objective standard of reasonableness.

### A. The Bostic Question

Nelson first appears to suggest that, by answering "no" to the so-called "Bostic" question, his counsel failed to preserve a more favorable standard of review for him on appeal. "[T]he Federal Rules of Criminal Procedure distinguish between cases in which a party objects to a court's decision and those in which a party neglects to make an objection, despite an opportunity to do so." United States v. Simmons, 587 F.3d 348, 353 (6th Cir. 2009) (citing Fed. R. Crim. P. 51(b)). Courts apply a reasonableness standard of review where objections are made and a plain-error standard in the absence of objections. Id. (citation omitted).

The Sixth Circuit has "suggested that district courts after announcing a proposed sentence, 'ask the parties whether they have any objections to the sentence . . . that have not previously been raised.'" United States v. Vonner, 516 F.3d 382, 385 (6th Cir. 2008) (quoting United States v. Bostic, 371 F.3d 865, 872 (6th Cir. 2004)). "If a sentencing judge asks this question and if the relevant party does not object, then plain-error review applies on appeal to those arguments not preserved in the district court." Id. (citing Bostic, 371 F.3d at 872–73) (emphasis added). "[T]he point of the question is not to require counsel to repeat objections or, worse, to undo previously raised objections." Simmons, 587 F.3d at 354 (quoting Vonner, 516 F.3d at 390). In other words, "it is unnecessary for a party to repeat previously made objections in order to secure the lower standard of review on appeal." Simmons, 587 F.3d at 355.

Here, Nelson's counsel repeatedly argued against the application of a cross-reference of second-degree murder by asserting that the proper cross-reference was involuntary manslaughter.

7

(See Cr. ECF No. 72 at PageID 442.)  In doing so, she preserved a higher standard of review for that argument on appeal, despite answering "no" when the Court asked if there was any "other objection from the Defendant."  (Id. at PageID 447.)  If, as Nelson's counsel asserts in her affidavit, "the panel incorrectly concluded that plain error review should apply" on appeal (ECF No. 12-1 at PageID 64), Nelson's argument is not one for ineffective assistance of counsel at the trial-court level, but rather is an argument that could have been raised on an appeal of the Sixth Circuit's decision.  In any event, it does not entitle him to § 2255 relief.

        B.        Failure to Obtain Mental Evaluation

Nelson next argues ineffective assistance of counsel based on his counsel's failure to obtain a mental evaluation even though he "has a long history of mental problems."  (ECF No. 1 at PageID 4.)  Nelson asserts that a mental evaluation "could have made a difference at sentencing."  (Id. at PageID 5.)  In her affidavit, Nelson's counsel asserts that she met with Nelson several times and "determined that there were no competency issues."  (ECF No. 12-1 at PageID 64.)

"A defendant meets the constitutional standard for competency if he has: (1) the sufficient present ability to consult with his counsel with a reasonable degree of rational understanding, and (2) a rational as well as factual understanding of the criminal proceedings against him."  Lopez v. United States, No. 1:21-cv-01097-STA-jay, 2024 WL 3868243, at *6 (W.D. Tenn. Aug. 19, 2024) (citing Indiana v. Edwards, 544 U.S. 164, 170 (2008)).  "[T]he bar for competency is high."  United States v. Miller, 531 F.3d 340, 350 (6th Cir. 2008).  A defendant or an attorney for the Government "may file a motion for a hearing to determine the mental competency of the defendant" at "any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant."  18 U.S.C. § 4241(a).

To begin, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690; see also United States v. Hinds, 2 F. App'x 420, 423 (6th Cir. 2001) (the court presumes "that defense counsel has rendered adequate assistance by exercising reasonable professional judgment and sound trial strategy," which "includes the decision not to file certain motions if, after investigation, doing so would not be necessary or advantageous." (citation omitted)). Although the Court noted at sentencing that Nelson had "clear mental health issues" (Cr. ECF No. 72 at PageID 474), there is no indication in the record that he was incompetent. The Sixth Circuit has explained that "it does not follow that because a person is mentally ill he is not competent to stand trial.'" United States v. Dubrule, 822 F.3d 866, 875–76 (6th Cir. 2016) (quoting United States v. Davis, 93 F.3d 1286, 1290 (6th Cir.1996) (cleaned up)). According to his counsel and this Court's evaluation, throughout his underlying criminal matter Nelson had a sufficient present ability to consult with his counsel with a reasonable degree of rational understanding, and had a rational as well as factual understanding of the criminal proceedings against him. See Lopez, 2024 WL 3868243, at *6. Because he did, his contention that his counsel's failure to obtain a mental evaluation constituted ineffective assistance of counsel is not well taken.

    C.  The Self-Defense Argument

Nelson's bases his third claim for ineffective assistance of counsel on his contention that his counsel failed to raise the argument that he acted in self-defense. That argument fails for multiple reasons. First, Nelson was charged under two provisions of 18 U.S.C. § 922(g) that make it unlawful for felons or those convicted of misdemeanor crimes of domestic violence to possess firearms or ammunition. See 18 U.S.C §§ 922(g)(1) and 922(g)(9). Those provisions do

9

not contain an exception for self-defense.  See, e.g., United States v. Burrell, No. 23-1261, 2024 WL 3823530, at *5 (6th Cir. Aug. 15, 2024) (denying challenges to the constitutionality of § 922(g)(1) as there was no "precedent explicitly holding that § 922(g)(1) is unconstitutional and because it is unclear that Bruen[5] dictates such a result"); United States v. Wheeler, No. 2:23-CR-0066, 2024 WL 1579915, at *7 (S.D. Ohio Apr. 11, 2024) (finding that facial and as-applied challenges to the constitutionality of § 922(g)(9) failed).

Moreover, Nelson's attorney explained in her affidavit that, based on the facts Nelson acknowledged and documents received in discovery, "[a] justification argument was likewise unfeasible." (ECF No. 12-1 at PageID 64.)  Rather than making an argument based explicitly on self-defense, Nelson's counsel argued that the applicable cross-reference should be reckless or negligent homicide.  (Id.)  That tact was not objectively unreasonable and to deem it so under these circumstances would thrust the Court into the ill-fitting role of "Monday morning quarterback." Smith v. United States, 542 F. Supp. 3d 755, 767 (M.D. Tenn. 2021) (citing Fountain v. United States, 211 F.3d 429, 434 (7th Cir. 2000)).  As the Supreme Court in Strickland explained,

> [j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

---

[5] New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1, 142 (2022).

466 U.S. at 689 (internal citation omitted). Nelson has not demonstrated that his counsel's failure to argue he acted in self-defense at his sentencing amounted to ineffective assistance.

### D.  Failure to Obtain Exculpatory Evidence

Nelson's final basis for asserting ineffective assistance of counsel is that his attorney failed to obtain exculpatory evidence in his state-court matter. However, Nelson's attorney asserts that she obtained a copy of the state-court discovery from Nelson's state-court attorney. The existence of that collaboration is supported, at least implicitly, by the fact that Nelson's state-court attorney testified during his federal sentencing at Darker's request. To the extent there was potentially exculpatory evidence, Nelson has not pointed to it, and thus has not satisfied his burden of demonstrating that his counsel's performance was deficient, nor has he overcome the strong presumption that her representation was not within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689. All of the ineffective assistance of counsel claims fail to provide him a basis for relief under § 2255.

### III.  **Prosecutorial Misconduct**

"On habeas review, the standard to be applied to claims of prosecutorial misconduct is whether the conduct was 'so egregious so as to render the entire trial fundamentally unfair.'" Pritchett v. Pitcher, 117 F.3d 959, 964 (6th Cir. 1997) (quoting Cook v. Bordenkircher, 602 F.2d 117, 119 (6th Cir.), cert. denied, 444 U.S. 936 (1979)). "In order to constitute the denial of a fair trial, prosecutorial misconduct must be so pronounced and persistent that it permeates the entire atmosphere of the trial or so gross as probably to prejudice the defendant." Id. (citations and internal quotations omitted). "The court must decide whether the prosecutor's misconduct likely had a bearing on the outcome of the trial in light of the strength of the competent proof of guilt."

United States v. Harris, No. CR 13-20314, 2017 WL 1077051, at *5 (E.D. Mich. Mar. 22, 2017) (citing Pritchett, 117 F.3d at 964.)

To the extent Nelson's prosecutorial misconduct arguments do not merely restate arguments that the Sixth Circuit already considered and rejected on his direct appeal, they do not otherwise state a basis for relief.

Nelson's main point appears to be that "[t]he Federal Prosecutor had talked to the Medical Examiner [f]or a week without [notifying] the Federal Defense Attorney about this Rebut[t]al Witness." (ECF No. 1 at PageID 11.) But it is not clear what sort of prosecutorial misconduct Nelson is asserting took place regarding the medical examiner. Nelson's sentencing was conducted over two days, August 6 and 12, 2019. (See Cr. ECF Nos. 54 & 59.) On August 8, 2019, the Government filed a Notice of Intention to Introduce Rebuttal Proof at Sentencing, telegraphing that it planned to "offer the testimony of Dr. Erica Curry, who the government would tender as an opinion witness with specialized knowledge in the field of forensic pathology." (Cr. ECF No. 58 at PageID 190.) Curry performed Caldwell's autopsy and determined that the manner of death was homicide, not suicide or accident. (Id.) She also testified that the Government had reached out to her the previous week about testifying and that she met with the Government before the second day of sentencing. (Cr. ECF No. 72 at PageID 411.) If Nelson is suggesting that the autopsy report was exculpatory evidence that should have been turned over to him sooner, the evidence was neither exculpatory, nor disclosed to him in an untimely manner. This basis for a claim of prosecutorial misconduct is without merit.

Nelson also asserts the prosecutor used a false police report and that there was generally a lack of evidence to support a finding that a cross-reference of second-degree murder was appropriate. (ECF No. 1 at PageID 9.) Nelson provides no support for his contention that the

police report was false, or that the prosecutor knew that it was. His arguments about a lack of evidence were addressed in the underlying criminal matter, in his appeal to the Sixth Circuit, and elsewhere in this Order. Those arguments are baseless.

Ultimately, there is no evidence in the record that demonstrates the prosecutor acted improperly, let alone that his conduct was "so egregious so as to render the entire trial fundamentally unfair." Pritchett, 117 F.3d at 964. Even if the conduct alleged by Nelson qualified as prosecutorial misconduct, which it does not, it cannot be said to have had a bearing on the outcome of the Court's determination that second-degree murder, and not involuntary or voluntary manslaughter, was the appropriate cross-reference under § 2K2.1(c). Nelson's assertions to the contrary are unsupported.

Nelson's motion, together with the files and record in this case, conclusively show that he is not entitled to relief. 28 U.S.C. § 2255(b). His sentence is valid and, therefore, his § 2255 Motion is **DENIED**. Judgment shall be entered for the United States.

## APPEAL ISSUES

Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see also Fed. R. App. P. 22(b). The COA must indicate the specific issue or issues that satisfy the required showing. 28 U.S.C. § 2253(c)(2) & (3). A § 2255 movant may not appeal without this certificate.

A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the

13

issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (internal quotation marks omitted).

> Where a district court has rejected a constitutional claim on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. . . . When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. . . .

Slack v. McDaniel, 529 U.S. 473, 484 (2000). "In short, a court should not grant a certificate without some substantial reason to think that the denial of relief might be incorrect." Moody v. United States, 958 F.3d 485, 488 (6th Cir. 2020). "To put it simply, a claim does not merit a certificate unless every independent reason to deny the claim is reasonably debatable." Id.; see also id. ("Again, a certificate is improper if *any* outcome-determinative issue is not reasonably debatable.").

The issues raised in Nelson's § 2255 Motion are meritless for the reasons previously stated. Because any appeal by him on these issues does not deserve attention, the Court **DENIES** a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)–(b), does not apply to appeals of orders denying § 2255 motions. Kincade v. Sparkman, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal in forma pauperis in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). Kincade, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P.

24(a)(1).  However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal in forma pauperis, the prisoner must file her motion to proceed in forma pauperis in the appellate court.  See Fed. R. App. P. 24(a)(4)–(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith.  It is therefore **CERTIFIED**, pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith.  Leave to appeal in forma pauperis is **DENIED**.[6]

**IT IS SO ORDERED**, this 24th day of September, 2024.

                                        s/ Sheryl H. Lipman
                                        SHERYL H. LIPMAN
                                        CHIEF UNITED STATES DISTRICT JUDGE

---

[6] If Nelson files a notice of appeal, he must also pay the full $605 appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the Sixth Circuit Court of Appeals within 30 days.